IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES FIRE INSURANCE
COMPANY and THE NORTH RIVER
INSURANCE COMPANY,

HONORABLE JEROME B. SIMANDLE

Plaintiffs,

Civil No. 04-4963 (JBS)

v.

ALDWORTH COMPANY, INC.,

**OPINION**

Defendant.

APPEARANCES:

George R. Hardin, Esq.
HARDIN, KUNDLA, McKEON, POLETTO & POLIFRONI, P.C.
673 Morris Avenue
P.O. Box 730 Springfield, New Jersey 07081
    Attorney for Plaintiffs

Patrick J. McDonnell, Esq.
Roberto K. Paglione, Esq.
LAW OFFICES OF McDONNELL & ASSOCIATES
500 W. Marlton Pike
Cherry Hill, New Jersey 08002
    Attorneys for Defendant

**SIMANDLE**, U.S. District Judge:

Plaintiffs United States Fire Insurance Company ("U.S. Fire") and The North River Insurance Company ("North River") brought this declaratory judgment action pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57, seeking a declaration by the Court that Plaintiffs have no duty to defend or indemnify Defendant Aldworth Company, Inc. ("Aldworth") for liability arising out of the underlying personal injury action, England v. Barron, No. 01SV541 (Coweta County, Georgia).

Defendant seeks to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue.[1] Alternatively, Defendant seeks to have this matter transferred either to the Northern District of Georgia, the jurisdiction encompassing the forum in which the underlying action is pending, or to the District of Massachusetts, the place of the insurance contract. For the reasons now stated, the motion will be denied in its entirety.

## I.   BACKGROUND

Defendant Aldworth is a corporation organized under the laws of Massachusetts with its principal place of business in Lynnfield, Massachusetts. (Compl. ¶ 3.) Aldworth is in the business of leasing drivers, warehouse workers, and other relevant employees to firms whose business involves transporting goods. Duncan v. Aldworth, 124 F.Supp.2d 268, 275 (D.N.J. 1999). Plaintiffs are New Jersey corporations with their principal places of business in Morristown, New Jersey.

---

[1] The plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). "[I]n reviewing a motion to dismiss under Rule 12(b)(2), [the court] must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Pinker, 292 F.3d at 368 (citations and quotations omitted). As to the Rule 12(b)(3) motion to dismiss for improper venue, the movant bears the burden of proof. Myers v. American Dental Assoc., 695 F.2d 716, 724 (3d Cir. 1982).

On August 14, 2001, Aldworth was sued on a respondeat superior theory of liability by Sandra and Andrew England in state court in Coweta County, Georgia, claiming that on August 30, 1999, Sandra England was punched in the face by Ricky Barron, a truck driver employed by Aldworth and/or Keystone Freight Company. (Id. at ¶¶ 6-8.) According to Plaintiffs, service of process on Aldworth was properly effectuated. (Id. at ¶ 10.)

Upon receipt of process, Aldworth's Director of Operations at that time, Wayne Kundrat, failed to forward copies of the underlying action to North River. (Id. at ¶¶ 11, 12.) North River, upon its own inquiries, first received notice of the underlying lawsuit on October 22, 2001. (Id. at ¶ 13.) That same day, North River sent a reservation of rights letter to Aldworth requesting an explanation as to why North River had not been notified of the underlying litigation. (Id.) On October 29, 2001, Kevin Roy, an Executive Vice President at Aldworth, responded by telephone to North River's letter and informed North River Claims Specialist Ritchie Royston that Wayne Kundrat had been instructed to forward a copy of the underlying action to North River but simply had failed to do so. (Id. at ¶ 14.) The next day, North River sent a letter to Aldworth declining coverage for liability arising from the underlying lawsuit on the grounds that Aldworth had breached its contractual duties to North River. (Id. at ¶ 15.)

3

In the underlying tort action, default judgment was entered against Aldworth as to liability and the amount of damages was tried to a jury.  A judgment was subsequently entered against Aldworth for $750,000 in compensatory damages and $1 million in punitive damages.  (Id. at 16.)

## II.  DISCUSSION

Transfer here may be appropriate regardless of whether venue is proper or whether this Court has personal jurisdiction over Defendant.  See Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 544 (3d Cir. 1985) (citing Reyno v. Piper Aircraft Co., 630 F.2d 149, 164-65 (3d Cir. 1980), rev'd on other grounds 454 U.S. 235 (1981), reh'g denied 455 U.S. 928 (1928)); Goldlawr v. Heiman, 369 U.S. 463, 466 (1962); 15 Charles Alan Wright, R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3827 (2d ed. 1986) (explaining that if "transfer can be ordered [under 28 U.S.C. § 1406(a)] of a case from a district where both venue and personal jurisdiction are lacking, it should follow a fortiori that there can be transfer [under § 1404(a)] if venue is proper and only personal jurisdiction is lacking").  Nonetheless, insofar as the Court's determination as to personal jurisdiction will govern which provision – either 28 U.S.C. §§ 1404(a) or 1406(a) – controls the transfer analysis, that issue must be discussed at the outset.  See Jumara v. Evangelina, 55 F.3d 873, 878 (3d Cir. 1995).

4

A.   <u>This Court Has Personal Jurisdiction Over Defendant</u>

Defendant is subject to the personal jurisdiction of this Court.  The issue of personal jurisdiction is approached as follows:

> [T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry.  First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution.  In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process. . . .
> Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation.  Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant.  Instead, the plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

<u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254, 258-59 (3d Cir. 1998) (internal citations omitted).

This Court has had the occasion to discuss Aldworth's relationship to the State of New Jersey once before.  <u>See</u> <u>Duncan v. Aldworth</u>, 124 F.Supp.2d 268 (D.N.J. 1999).  There, the Regional Director of the National Labor Relations Board ("NLRB") petitioned the Court for a temporary injunction pursuant to section 10(j) of the National Labor Relations Act (the "Act"), as amended, 29 U.S.C. § 160(j), following the issuance of an unfair labor practice complaint under section 10(b) of the Act alleging

that Aldworth and Dunkin' Donuts Mid-Atlantic Distribution
Facility ("Dunkin' Donuts") engaged in unfair labor practices.
In reaching the conclusion that Aldworth and Dunkin' Donuts were
"joint employers" for purposes of the Act, the Court noted that
Aldworth employed about 1,500 employees in roughly 24 states,
including New Jersey; Aldworth provided services to about 25
businesses, including Dunkin' Donuts, which maintained a
distribution facility in Swedesboro, New Jersey; at that
facility, Aldworth employed about 130-140 employees, consisting
of about 63 drivers, 40-45 warehouse employees, 30-40 driver
helpers and a number of supervisors.  Id. at 276.
The Court further noted that "Aldworth pays the [Dunkin' Donuts]
employees wages and benefits, maintains workers' compensation
insurance, withholds taxes, and keeps records."  Id.

     Moreover, another of Aldworth's customers, Commodity
Specialist Company ("Commodity"), currently maintains an office
in Newark, New Jersey.  (12/15/04 Dunn Aff. at ¶ 5.)  Aldworth
leases drivers to Commodity who report to work at the Newark
office.  (Id.)  As with its Dunkin' Donuts customers, Aldworth
has purchased New Jersey workers' compensation insurance for
Commodity employees.  (Def. Reply Br. at 7.)  In addition, it is
undisputed that Aldworth obtained an employers' liability
insurance policy from U.S. Fire for its employment activities in
New Jersey and that it maintains a New Jersey Taxpayer
identification number.  (Pls. Br. at 8; Pls. Sur-Reply Br. at 2.)

These facts support the Court's conclusion that Aldworth "has purposefully directed its activities toward the residents of [New Jersey], or otherwise purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Kiekert AG, 155 F.3d at 258-59.  The Court thus has general jurisdiction over Defendant.[2]

In any event, the Court finds that there is specific jurisdiction.

> In order for specific jurisdiction to be properly exercised under the Due Process Clause, the plaintiff must satisfy a two-part test.  First, the plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum.  Second, for jurisdiction to be exercised the court must determine, in its discretion, that to do so would comport with "traditional notions of fair play and substantial justice."

IMO Industries, 155 F.3d at 259 (internal citations omitted).  Both prongs are satisfied here.  Specifically, the subject matter of the complaint in part was the U.S. Fire Insurance policy which Aldworth sought in order to cover its employment activities in the District of New Jersey.  As such, it does not offend "traditional notions of fair play and substantial justice" that Defendant would be hailed into a New Jersey court in a matter relating to that very agreement.

---

[2] Indeed, Aldworth concedes that if its "leased 'employees' are interpreted to be its employees, rather than [those of] its customer," then this Court has jurisdiction over Defendant. (Def. 12/30/04 Ltr. Br. at 3.)

B.   <u>Transfer Under § 1404(a)</u>

Because this Court has personal jurisdiction over Defendant Aldworth, Defendant "resides" in this judicial district within the meaning of 28 U.S.C. § 1391(a) and (c).[3] For that reason, venue here is proper.  Even though venue is proper, however, the Court has discretion to transfer the matter to another district pursuant to 28 U.S.C. § 1404(a).  That section provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

_____

[3] Subject matter jurisdiction here is founded exclusively on 28 U.S.C. § 1332.  Pursuant to 28 U.S.C. § 1391(a):

> A Civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Where, as here, the defendant is a corporation, residency is defined by 28 U.S.C. § 1391(c).  Under that provision, for purposes of determining whether venue is proper, "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction."  <u>Id.</u>

brought."[4] 28 U.S.C. § 1404(a); see <u>Shutte v. ARMCO Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970).

First, the events giving rise to this action took place in Georgia and, thus, this action could have been originally filed there.[5] (Compl. at ¶ 7; Def. Br. at 2.)  However, the transferee venue is not more convenient to the parties and witnesses.  To be sure, courts are not limited to considerations of convenience alone.  Instead, "commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" <u>Jumara</u>, 55 F.3d at 879.  Thus, "while there is no definitive

---

[4] It should be pointed out that 28 U.S.C. § 1404(a), which permits a court in its discretion to <u>transfer</u> a matter from a proper venue to a more convenient forum, is separate and distinct from the ancient doctrine of forum non conveniens which allows a court to <u>dismiss</u> an action because the chosen forum, while also a proper venue, is inconvenient. See 15 Charles Alan Wright, R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3828 (2d ed. 1986). (<u>Contra</u> Pls. Br. at 18 ("The court should not <u>transfer</u> venue of the action to another jurisdiction on the basis of forum non conveniens.") (emphasis added); Def. Br. at 9 ("<u>[T]ransferring</u> this case under the doctrine of forum non conveniens would still be proper.") (emphasis added).)
Ever since section 1404(a) went into effect in 1948, "[t]he doctrine of forum non conveniens has only a limited continuing vitality in federal courts. . . .  It is only when the more convenient forum is a foreign country – or perhaps, under rare circumstances, in a state court or a territorial court – that a suit brought in a proper federal venue can be dismissed on grounds of forum non conveniens." 15 Wright & Miller § 3828.

[5] Indeed, in opposing Defendant's motion to dismiss, Plaintiffs nowhere dispute that this action could have been brought in the Northern District of Georgia.

9

formula or list of factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a)."   Id.

> The private interests have included:  plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
> The public interests have included:  the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interests in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).  The Court has carefully considered each of these factors and now holds that Defendant has not satisfied its burden of establishing the need to transfer.   Id. at 879.  For the following reasons, Plaintiffs' choice of venue will not be disturbed.

     1.    <u>The Northern District of Georgia Is Not More
Convenient Than the District of New Jersey for the
Parties and Witnesses</u>

      "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 646 (1964). It is well settled that a court will not order transfer of a case if doing so merely shifts the burden from one party to another. <u>Barrack</u>, 376 U.S. at 646. For the following reasons, it is clear that New Jersey is at least as convenient as the Northern District of Georgia for the parties and witnesses in this case.

      Defendant argues that "most of the witnesses and relevant documents are located in the Northern District of Georgia. In fact, the adjuster who handled the claim on behalf of Plaintiffs lives and works in Georgia. Highly relevant witnesses will be the claimants and the attorneys, all of whom are located in Georgia." (Def. Br. at 11.) The Court is not persuaded by this argument.

     First, Aldworth is a Massachusetts company with its principal place of business in Lynnfield, Massachusetts. Like Plaintiffs, then, Defendant likely maintains its books and records outside of Georgia.[6] Second, the convenience of the insurance adjuster should not weigh in favor of transfer when

---

[6] In fact, Plaintiffs' "books and records relevant to this declaratory judgment action, including claims and files, are currently located in New Jersey." (Pls. Br. at 20.)

Plaintiffs themselves are not troubled by the potential inconvenience of bringing their adjuster to New Jersey in the event of trial.  Similarly, the convenience of the tort claimants in the underlying dispute in Georgia is irrelevant as they are not parties to this litigation nor will they likely be called as witnesses.[7]

Finally, Defendant would have the Court believe that the relative wealth of the parties counsels in favor of transfer. Specifically, Defendant maintains that as "a small family owned company that is being stretched with all of the litigation in Georgia," it is entitled to transfer to the situs of the underlying tort action.  (Def. Reply Br. at 10.)  That characterization stretches the truth.  In the first instance, the single underlying dispute has been resolved.  In any event, Aldworth, despite its representations to the Court, is hardly a "small family owned company."  Indeed, on its own company website Aldworth boasts that it provides "nationwide logistics support" by "employ[ing] over two thousand logistics personnel and supply

_____

[7] It is worth noting that "[t]he convenience of witnesses is given less consideration if the defendant is a transportation company and is able to bring the witnesses to the forum with little difficulty."  15 Wright & Miller § 3851.  Here, Aldworth may be deemed in a broad sense a "transportation company."  Even if accurate, however, that characterization is not relevant as Aldworth does not itself provide transportation services. Rather, it provides its customers with transportation employees. See http://www.aldworthcompany.com/content.gif.

chain professionals nationwide."  <u>See</u>
http://www.aldworthcompany.com/content.gif.  The Court is not
sympathetic to the financial strain that this litigation may
impose on Aldworth any more than it would be to any other
national company defending against a litigation outside of its
home state.

      2.   <u>The Public Interest Is Well Served By Keeping the
Action In This District</u>

     One factor that is frequently considered by courts in
determining whether transfer is in the interest of justice is
"the desire to avoid multiplicity of litigation from a single
transaction."  15 Wright & Miller § 3854.  First, as already
noted, the underlying state action has been resolved.  In any
event, even if the state action were pending, this is not "a
situation in which two cases involving precisely the same issues
are simultaneously pending in different District Courts."
<u>Continental Grain Co. v. Barge FBL-585</u>, 364 U.S. 19, 26 (1960).

     To be sure, "[t]he pendency of related litigation in another
forum is a proper factor to be considered in resolving choice of
venue questions . . . and may have been decisive in a number of
cases where the convenience factors were inconclusive . . . .
However, we have found no case where it has carried the day
against factors pointing in the other direction."  <u>Codex Corp. v.
Milgo Electronic Corp.</u>, 553 F.2d 735, 739 (1st Cir. 1977).  In
fact, the pendency of another related litigation need not be

given any weight if there is no realistic possibility of consolidating the two cases.  15 Wright & Miller § 3854.  Here, the Court can not envision that possibility here, especially because the law to be applied in each action would be different.  Popkin v. Eastern Air Lines, Inc., 253 F.Supp. 244, 249 (E.D.Pa. 1966) (recognizing consolidation was unlikely where the law of different states would govern the two actions).

Furthermore, Defendant is incorrect that the Northern District of Georgia has a local interest in deciding this "local controversy."  The contractual issues involved arise from insurance contracts entered into outside of Georgia and which were secured in order to cover Aldworth's employment activities in, among other places, the District of New Jersey.[8]

Finally, the Court has considered which law will apply to the facts of this case.  As a federal court sitting in diversity jurisdiction, the Court must apply the law of this state, including its choice of law rules.  Aetna Surety and Casualty Co

---

[8] Courts will additionally consider the relative docket conditions of the transferor and transferee courts.  In doing so, however, "[a] court should not under § 1404(a) look to docket conditions in order to serve the court's own convenience." Fannin v. Jones, 229 F.2d 368, 369 (6th Cir. 1956) (per curiam), cert. denied, 351 U.S. 938 (1956).  Where, as here, though, the relative congestion of the respective dockets is comparable, this consideration does not weigh in favor of transfer.  See Judicial Caseload Profile Report, available at http://www.uscourts.gov/cgi-bin/cmsd2003.pl (listing the number of actions per judgeship in the District of New Jersey and the Northern District of Georgia).

v. Sacchetti, 956 F.Supp. 1163, 1168 (D.N.J. 1996) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Generally, in interpreting insurance contracts New Jersey courts will apply "the law of the place of the contract . . . unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield." Sacchetti, 956 F.Supp. at 1168 (quoting State Farm Mutual Automobile Insur. Co. v Simmons Estate, 417 A.2d 488, 493 (N.J. 1980)).

Here, the place of the contract is Massachusetts. Defendant acknowledges that the law of Massachusetts should, thus, apply. This Court and the District Court in Georgia would be equally well-equipped to apply Massachusetts law to the facts of this case. To be sure, Defendant alternatively seeks transfer to the District of Massachusetts. For the same reasons as discussed, infra, however, transfer to that district is likewise not warranted. The choice of law question by itself does not change that conclusion.

In light of the above, the Court will not transfer this matter.

**III. CONCLUSION**

For the reasons explained <u>supra</u>, jurisdiction and venue are proper in this Court.  Accordingly, the motion to dismiss by Defendant Aldworth will be denied.  Moreover, because the convenience of the parties and witnesses would not best be served by transferring this case, and because the interests of justice do not so require, this Court will deny Aldworth's motion to transfer venue.

The accompanying Order is entered.


 **June 28, 2005**                                 s/ *Jerome B. Simandle*
Date                                                          JEROME B. SIMANDLE
                                                                U.S. District Judge

16